1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10                                  **EASTERN DIVISION**

11

12    QUIANA BRYANT, as Guardian ad Litem )    No. ED CV 09-1537-PLA
      for M.V.W., a minor,                    )
13                                            )
                      Plaintiff,              )    **MEMORANDUM OPINION AND ORDER**
14                                            )
                  v.                          )
15                                            )
      MICHAEL J. ASTRUE,                      )
16    COMMISSIONER OF SOCIAL                  )
      SECURITY ADMINISTRATION,                )
17                                            )
                      Defendant.              )
18   _____)

19

20                                        **I.**

21                                  **PROCEEDINGS**

22          Quiana Bryant ("plaintiff"), on behalf of her minor son M.V.W.,[1] filed this action on August

23   19, 2009, seeking review of the Commissioner's denial of M.V.W.'s application for Supplemental

24   Security Income payments.   The parties filed Consents to proceed before the undersigned

25   Magistrate Judge on October 7, 2009, and October 8, 2009.  Pursuant to the Court's Order, the

26   parties filed a Joint Stipulation on April 28, 2010, that addresses their positions concerning the

27   _____

28      [1]   At the time this action was filed, Quiana Bryant was appointed Guardian ad Litem for her
      minor son, who will be referred to herein as "M.V.W."

1  disputed issues in the case.  The Court has taken the Joint Stipulation under submission without

2  oral argument.

3

4  ## II.

5  ## BACKGROUND

6  On August 26, 2005, plaintiff filed an application seeking Supplemental Security Income

7  payments for her minor son, M.V.W., alleging that he has been disabled since August 19, 2005,

8  due to juvenile diabetes and related complications including urination problems, hunger, sweating,

9  headaches, shaking, anxiety, and nosebleeds.  [Administrative Record ("AR") at 140-47.]  After

10  the application was denied initially and upon reconsideration, plaintiff requested a hearing before

11  an Administrative Law Judge ("ALJ").  [AR at 73-82, 86.]  A hearing was held on November 15,

12  2007, at which plaintiff and M.V.W. appeared with counsel and testified.  [AR at 22-70.]  A medical

13  expert also testified.  [AR at 44-47, 49-56, 58-69.]  On February 14, 2008, the ALJ determined that

14  M.V.W. was not disabled.  [AR at 9-21.]  When the Appeals Council denied plaintiff's request for

15  review of the hearing decision on April 28, 2009, the ALJ's decision became the final decision of

16  the Commissioner.  [AR at 1-3.]  This action followed.

17

18  ## III.

19  ## STANDARD OF REVIEW

20  Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

21  decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

22  evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,

23  60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

24  In this context, the term "substantial evidence" means "more than a mere scintilla but less

25  than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

26  adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

27  1257.  When determining whether substantial evidence exists to support the Commissioner's

28  decision, the Court examines the administrative record as a whole, considering adverse as well

1  as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2  Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

3  must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

4  53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

5

6                                                    **IV.**

7                            **EVALUATING DISABILITY IN A CHILD**

8          The evaluation of disability for children differs from that for adults.  For an individual under

9  eighteen years of age to be disabled for the purpose of receiving benefits, he must suffer from a

10  "medically determinable physical or mental impairment, which results in marked and severe

11  functional limitations, and which can be expected to result in death or which has lasted or can be

12  expected to last for a continuous period of not less than [twelve] months."   42 U.S.C. §

13  1382c(a)(3)(C)(i).  An impairment meets this requirement if it meets or equals in severity any

14  impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  20 C.F.R.

15  § 416.924(d).

16

17  **A.      THE THREE-STEP SEQUENTIAL EVALUATION PROCESS**

18          The regulations promulgated by the Social Security Administration establish a three-step

19  sequential evaluation process for child disability cases.  See 20 C.F.R. § 416.924.  At step one,

20  the relevant inquiry is whether the child is engaged in substantial gainful activity.  If so, there is no

21  disability, and the claim is denied.  20 C.F.R. § 416.924(b).  If the child is not engaged in

22  substantial gainful activity, the fact finder then determines whether the child has a medically

23  determinable impairment or combination of impairments that is severe.  If the impairment is a

24  "slight abnormality or a combination of slight abnormalities that causes no more than minimal

25  functional limitations," the Commissioner will find that the impairment is not severe and will deny

26  the child's claim.  20 C.F.R. § 416.924(c).  If the claimant has a severe impairment, the third and

27  final step assesses whether the impairment meets or medically or functionally equals in severity

28  an impairment in the Listings.  If the impairment meets or equals a listed impairment, the child will

1   be found disabled, assuming that the twelve-month duration requirement is also met.  20 C.F.R.

2   § 416.924(d).

3          A child's impairment "is medically equivalent to a listed impairment ... if it is at least equal

4   in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 416.926(a).  To

5   establish medical equivalence, "a claimant must establish symptoms, signs and laboratory findings

6   'at least equal in severity and duration' to the characteristics of a relevant listed impairment."

7   Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526).

8          To determine whether a child's severe impairment functionally equals a listed impairment,

9   the Commissioner assesses all of the functional limitations caused by the child's impairment in six

10  "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

11  and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6)

12  health and physical well-being.  20 C.F.R. § 416.926a(a), (b).  To functionally equal a listed

13  impairment, a child's impairment must result in "marked" limitations in two domains or an "extreme"

14  limitation in one domain.  20 C.F.R. § 416.926a(a).  A "marked" limitation is one that "interferes

15  seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20

16  C.F.R. § 416.926a(e)(2).  It is "'more than moderate'" but "'less than extreme.'"  Id.  An "extreme"

17  limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or

18  complete activities."  20 C.F.R. § 416.926a(e)(3).  It is the rating given to "the worst limitations."

19  Id.

20

21  **B.      THE ALJ'S APPLICATION OF THE THREE-STEP PROCESS**

22         In this case, at step one, the ALJ found that M.V.W. has not engaged in substantial gainful

23  activity at any relevant time.  [AR at 12.]  At step two, the ALJ concluded that M.V.W. has the

24  severe impairment of "diabetes mellitus, insulin dependent."  [Id.]  At step three, the ALJ

25  determined that M.V.W.'s impairment does not meet or equal any impairment in the Listings.  [AR

26  at 12, 20.]  Specifically, in assessing M.V.W.'s functional limitations in each of the six domains

27  described above, the ALJ stated that M.V.W. has the following: no limitation in acquiring and using

28  information; no limitation in attending and completing tasks; less than marked limitation in

1 interacting and relating with others; no limitation in moving about and manipulating objects; no

2 limitation in caring for himself; and less than marked limitation in health and physical well-being.

3 [AR at 15-20.]  Therefore, the ALJ concluded that M.V.W. is not disabled.  [AR at 9, 20-21.]

4

5

**V.**

6

**THE ALJ'S DECISION**

7 Plaintiff contends that the ALJ erred by failing to properly consider: (1) the totality of the

8 relevant medical evidence, and (2) the testimony and subjective statements of plaintiff and the

9 subjective statements of Mr. Greg Shahin, M.V.W.'s first grade teacher.  [Joint Stipulation ("JS")

10 at 3-6, 10-14.]  As set forth below, the Court agrees with plaintiff, in part, and remands the matter

11 for further proceedings.

12

13 **THE ALJ'S CREDIBILITY DETERMINATION**

14 Plaintiff contends that the ALJ failed to properly consider her testimony and subjective

15 statements in the forms she completed regarding M.V.W.'s "impairments and resulting limitations."

16 [JS at 10-12, <u>citing</u> AR at 29-49, 56-59, 141, 144, 146, 148-56, 159, 162, 166, 168-69.]  Plaintiff

17 further contends that the ALJ failed to properly consider the subjective statements of M.V.W.'s first

18 grade teacher, Mr. Shahin, in the questionnaire he completed regarding M.V.W.'s functioning.  [JS

19 at 13-14.]  As set forth below, the Court finds that the ALJ failed to provide any specific reasons

20 germane to plaintiff for discrediting her testimony and subjective statements.  Therefore, remand

21 is warranted for the ALJ to properly assess plaintiff's credibility.

22 **1.      Plaintiff's Testimony and Subjective Statements**

23 At the hearing, plaintiff testified that M.V.W. missed school a total of 15 days during the

24 2006-2007 school year due to his "highly elevated blood sugar levels."  [AR at 29, 34.]  Plaintiff

25 stated that as a result of M.V.W.'s blood sugar elevation, he sometimes experienced vision

26 problems and consequently ran into objects.  [AR at 32-34.]  Plaintiff noted that at other times,

27 M.V.W. could not attend school because when he would go to school, he had to use the bathroom

28 approximately every ten to fifteen minutes.  [AR at 35.]  Plaintiff said that if M.V.W. was not

5

1   complaining about his vision, he was complaining about "really bad" headaches in which he would

2   be "holding his head and standing [in] the same spot ... not moving or anything." [Id.] Plaintiff also

3   stated that M.V.W. repeated the first grade because of his diabetic condition and that his

4   headaches were more frequent at the time of the hearing than in August 2005.  [AR at 35-36.]

5   Plaintiff also noted that M.V.W. must sometimes miss school to attend his appointments scheduled

6   once every three months at a diabetes clinic.  [AR at 38-39.]  Plaintiff confirmed that M.V.W. was

7   hospitalized overnight three times since August 2005, at least one of those times for diabetic

8   ketoacidosis.  [AR at 39-40, 42-43.]  From March to November 2006, M.V.W. experienced

9   episodes of low blood sugar approximately ten times.  [AR at 47-49.]  Plaintiff also stated that

10  M.V.W. takes insulin four or more times each day [AR at 44], and currently has ketones in his

11  urine, a condition that plaintiff said occurs when a diabetic's blood sugar level is high.  [AR at 56.]

12  Plaintiff noted that M.V.W. experiences stomach pains related to having ketones.  [Id.]

13      In addition to her testimony, plaintiff completed several written reports regarding M.V.W.'s

14  condition.  In the initial Disability Report for M.V.W. [AR at 140-47], plaintiff stated that M.V.W. has

15  a disabling form of juvenile diabetes and complications that cause pain and other symptoms.  [AR

16  at 141.]  Plaintiff noted that M.V.W. takes insulin three or four times a day "or as needed" for his

17  condition; has a "hard time making it to the restroom;" gets nosebleeds; has a special diet; and

18  experiences hunger, sweating, shaking, anxiety, and headaches.  [AR at 146.]  In a Function

19  Report for M.V.W. dated September 1, 2005 [AR at 148-57], plaintiff stated that M.V.W.'s ability

20  to communicate is limited in some areas [AR at 151, 154], he needs help with many things after

21  being sick [AR at 155], he sometimes will not complete his homework [AR at 156], and he has "a

22  hard time with homework because of illness and other headache[s]."  [Id.]  In another Disability

23  Report [AR at 158-64], plaintiff stated that since last completing a disability report, M.V.W. had no

24  changes in his condition or any new limitations, illnesses, or injuries.  [AR at 159.]  Plaintiff noted

25  in the report that M.V.W.'s condition sometimes causes vision problems and feelings of being "sick

26  to the stomach."  [AR at 162.]  In yet another Disability Report [AR at 165-70], plaintiff stated that

27  beginning on approximately March 1, 2006, M.V.W. "started to complain about his eyes" and

28  "see[s] specks and red dots" and that he began to use "the restroom while he is [a]sleep with no

1  control over urine or know[ledge of] when it is time." [AR at 166.] Plaintiff also noted that

2  M.V.W.'s vision problems were worsening every week. [AR at 168.]

3      The testimony of lay witnesses, including family members, about their own observations

4  regarding a claimant's impairments constitutes competent evidence that must be considered by

5  the Commissioner in the disability evaluation. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885

6  (9th Cir. 2006) (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)). "'In disability cases

7  where the child is unable to adequately describe her symptoms, the Commissioner accepts the

8  testimony of a person most familiar with the child's condition, such as a parent.'" Smith ex rel.

9  Enge v. Massanari, 139 F. Supp. 2d 1128, 1134 (C.D. Cal. 2001) (quoting Brown v. Callahan, 120

10  F.3d 1133, 1135 (10th Cir. 1997)) (citing 20 C.F.R. § 416.928(a)). In such circumstances, the

11  testimony of a parent is a particularly valuable source of information because a parent usually

12  sees the child every day. 20 C.F.R. § 416.924a(a)(2)(i). Such lay testimony cannot be discounted

13  unless the ALJ provides specific reasons that are germane to that witness for doing so. Bruce v.

14  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

15  Cir. 1996)); see Smith ex rel. Enge, 139 F. Supp.2d at 1134; Merrill ex rel. Merrill v. Apfel, 224

16  F.3d 1083, 1085-86 (9th Cir. 2000) (applying same standard to mother of child applicant for

17  Supplemental Security Income payments). Failure to consider lay testimony will be considered

18  harmless error only if the reviewing court "can confidently conclude that no reasonable ALJ, when

19  fully crediting the testimony, could have reached a different disability determination." Stout v.

20  Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006).

21      In this case, the ALJ failed to provide a specific reason germane to plaintiff for discrediting

22  her testimony and subjective statements in the forms she completed. "While an ALJ may certainly

23  find testimony not credible and disregard it ..., [courts] cannot affirm such a determination unless

24  it is supported by specific findings and reasoning." Robbins, 466 F.3d at 884-85. Here, the ALJ

25  in his credibility determination with regard to plaintiff's testimony and written statements failed to

26  provide any analysis, instead merely summarizing certain medical evidence. [See AR at 14-15.]

27  Specifically, after summarizing some of plaintiff's testimony and subjective statements, the ALJ

28  found that M.V.W.'s "medically determinable impairment could reasonably be expected to produce

7

1  the alleged symptoms, but that the statements concerning the intensity, persistence, and limiting

2  effects of [M.V.W.'s] symptoms are not entirely credible." [AR at 14.]

3        The ALJ did not provide a legitimate reason germane to plaintiff for discounting her

4  credibility.  To the extent the ALJ implicitly rejected plaintiff's testimony and written statements as

5  being unsupported by the medical evidence, an ALJ cannot rely solely on an absence of

6  supporting medical evidence to reject lay witness testimony.  See Bruce, 557 F.3d at 1116 ("Nor

7  under our law could the ALJ discredit [a claimant's wife's] lay testimony as not supported by

8  medical evidence in the record.") (citing Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996));

9  see also Smith ex rel. Enge, 139 F. Supp. at 1134 (the ALJ erred in implicitly rejecting the

10  testimony of the mother of a minor claimant regarding the extent and limiting effects of her

11  daughter's asthma symptoms).  In any event, the medical expert testimony supported much of

12  plaintiff's testimony and written statements concerning the existence of plaintiff's symptoms.[2]  The

13  ALJ gave no other valid reason for discrediting plaintiff's testimony and subjective statements.

14  Remand is warranted for the ALJ to properly assess plaintiff's testimony, subjective statements

15  in the forms, and credibility.

16

17     [2]  At the hearing, board certified pediatrician Dr. Colin P. Hubbard gave expert testimony
about M.V.W.'s condition. [AR at 44-47, 49-56, 58-69, 242.]  Although Dr. Hubbard opined that
18  M.V.W.'s diabetes does not meet, medically equal, or functionally equal any of the childhood
Listings [AR at 50-53], he also testified that juvenile diabetes could cause the symptoms described
19  by plaintiff.  First, Dr. Hubbard stated that M.V.W.'s headaches as described by plaintiff may be
20  caused by ketoacidosis or high blood sugar and that "[h]igh blood sugar over a period of time will
certainly cause [the] blurred vision" that plaintiff testified about. [AR at 53, 64; see AR at 32-37.]
21  Second, in response to plaintiff's testimony about M.V.W.'s night sweats, Dr. Hubbard stated that
low blood sugar levels could in fact cause a person to be "clammy and sweaty." [AR at 54; see
22  AR at 146.]  Third, Dr. Hubbard stated that urinary incontinence, a symptom of M.V.W. that plaintiff
23  listed in the disability forms, indicates high blood sugar levels. [AR at 54-55; see AR at 146, 166,
169.]  Fourth, Dr. Hubbard stated that M.V.W.'s "spilling" of ketones into his urine as testified by
24  plaintiff is consistent with high blood sugar levels. [AR at 58; see AR at 56-58.]  Fifth, Dr. Hubbard
agreed that plaintiff's testimony concerning M.V.W.'s complaints "about how he feels" would be
25  "consistent given the elevated blood sugars." [AR at 66; see AR at 56-57.]  Lastly, Dr. Hubbard
26  stated that if M.V.W. is developing ketoacidosis, then ketoacidosis would show up on the strips
that plaintiff uses to test the ketone levels in M.V.W.'s urine. [AR at 66; see AR at 57-58.]
27  Specifically, Dr. Hubbard stated that M.V.W. would have ketoacidosis "in his urine before he has
it significantly in the blood," which, according to Dr. Hubbard, would indicate that M.V.W.'s
28  diabetes is not controlled. [AR at 66-67.]

1       **2.      Mr. Shahin's Subjective Statements**

2              On April 3, 2006, Mr. Shahin completed a Teacher Questionnaire from the Social Security

3       Administration, stating that he knew M.V.W. from the 2005-2006 school year and saw him on a

4       daily basis. [AR at 196-203.] Mr. Shahin reported "an unusual degree of absenteeism" by M.V.W.

5       due to his "poor health." [AR at 196.] Mr. Shahin also noted that while M.V.W.'s actual grade level

6       was first grade, M.V.W.'s reading and written language levels were at kindergarten instruction

7       levels. [Id.] Mr. Shahin also assessed the functional limitations caused by M.V.W.'s impairment

8       in each of the six domains. [AR at 197-202.] First, Mr. Shahin reported that M.V.W. had problems

9       acquiring and using information, in that M.V.W. "is not independent in reading and writing," "does

10      best when working individually with an adult," and "is getting extra help daily ... but progress is very

11      slow." [AR at 197.] Second, Mr. Shahin stated that M.V.W. had problems attending and

12      completing tasks, in that M.V.W. must work separately from the other students because he talks

13      and disturbs them. [AR at 198.] Mr. Shahin also observed that M.V.W. at times "appears very

14      sleepy and lays his head down on his desk." [Id.] Third, Mr. Shahin stated that M.V.W. had

15      problems interacting and relating with others. [AR at 199.] Mr. Shahin reported having to

16      "implement behavior modification strategies" for M.V.W. by placing M.V.W. at "a desk by himself

17      due to talking." [Id.] Mr. Shahin also noted that when M.V.W. "gets frustrated or angry[,] he shuts

18      down[,] ... usually goes under a table[,] and will not tell me what is bothering him." [Id.] Fourth,

19      Mr. Shahin stated that M.V.W. had no problems moving about and manipulating objects. [AR at

20      200.] Fifth, Mr. Shahin indicated that M.V.W. had several problems caring for himself, as he "is

21      frustrated because he is behind the other children" and "does not handle his frustration

22      appropriately at times by withdrawing and giving up." [AR at 201.] Lastly, Mr. Shahin stated that

23      M.V.W. suffers from hyperglycemia, which caused him to miss "a lot of school[,]" and that "[h]e has

24      fallen behind in school as a result." [AR at 202.] However, Mr. Shahin stated that M.V.W.'s

25      "health seems to be more stable now and [his] attendance is better." [Id.] Mr. Shahin also noted

26      that M.V.W. takes medication regularly, which improves his alertness. [Id.]

27             As M.V.W.'s former teacher, Mr. Shahin qualifies as an "other source" under the Social

28      Security Administration's regulations. See 20 C.F.R. §§ 404.1513(d)(2), 416.913(d)(2). Although

1  an ALJ may give more weight to an opinion of an "acceptable medical source" over an "other

2  source" (see 20 C.F.R. § 416.927; Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)), the ALJ

3  may not completely disregard an opinion from an "other source" merely because it is not an

4  "acceptable medical source."  See Social Security Ruling[3] 06-03p ("[T]here is a requirement to

5  consider all relevant evidence in an individual's case record"); see also Sprague v. Bowen, 812

6  F.2d 1226, 1232 (9th Cir. 1987) (noting that regulations require an ALJ to "consider observations"

7  even "by non-medical sources").  As the Social Security Administration has recognized, "the case

8  record should reflect the consideration of opinions from medical sources who are not 'acceptable

9  medical sources' and from 'non-medical sources' who have seen the claimant in their professional

10  capacity .... [T]he adjudicator generally should explain the weight given to opinions from these

11  'other sources[.]'"  SSR 06-03p.  "Although [the regulations] do not address explicitly how to

12  evaluate evidence (including opinions) from 'other sources,' they do require consideration of such

13  evidence when evaluating an 'acceptable medical source's' opinion."  Id.

14         In this case, the ALJ properly considered and explained the weight given to the subjective

15  statements of Mr. Shahin as an "other source" and as a lay witness.  In the decision, the ALJ

16  summarized some of Mr. Shahin's comments in the questionnaire and acknowledged giving

17  "significant consideration" to the questionnaire.  [AR at 15.]  The ALJ apparently credited Mr.

18  Shahin's statements that M.V.W. has higher absenteeism than other children and experiences

19  difficulties with hyperglycemia, but that he is improving and his alertness improves after taking

20  prescribed medication.  [Id.; see AR at 202.]  The ALJ ultimately gave "less weight to Mr. Shahin's

21  conclusions regarding [M.V.W.'s] academic and social functioning" relevant to the six domains

22  discussed above.  [AR at 15.]  First, the ALJ pointed to the Loma Linda University Children's

23  Hospital Progress Notes dated August 10, 2007, indicating, among other things, M.V.W.'s

24  academic progress.  [See AR at 15, 274-77.]  Specifically, the ALJ noted that M.V.W.'s progress

25

26      [3]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute
27  Social Security Administration interpretations of the statute it administers and of its own
    regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
28  Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   notes state that while M.V.W. "was held back in school from being ill so frequently in the first

2   grade," he "has since caught up and is taking advanced coursework in the [second] grade." [AR

3   at 15, citing AR at 276.]  M.V.W.'s progress notes also state that he "has never required testing

4   for a learning disability or problems related to behavior issues."  [AR at 276.]   The ALJ also

5   referred to the testimony of both plaintiff and M.V.W. regarding M.V.W.'s current grades to further

6   show his academic progress since the date of the questionnaire. [AR at 15.] In the questionnaire,

7   Mr. Shahin noted that M.V.W.'s "progress is very slow," he "is so far behind now in school," and

8   he was at kindergarten reading and written language levels even though he was in first grade. [AR

9   at 196-97, 202.]  However, at the hearing, M.V.W. testified that he is currently in second grade,

10   enjoys doing schoolwork, and is getting "A" grades.  [AR at 28.]  When asked about M.V.W.'s

11   current grades, plaintiff stated that M.V.W. is "doing okay" and is getting "B" grades.  [AR at 29.]

12   The contrast between Mr. Shahin's statements in the questionnaire about M.V.W.'s very slow

13   progress and the evidence cited by the ALJ demonstrating M.V.W.'s academic improvement is a

14   specific and germane reason for giving Mr. Shahin's statements about M.V.W.'s academic and

15   social problems less weight.  See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164

16   (9th Cir. 2008) (an ALJ's finding that a classmate's testimony about the claimant was inconsistent

17   with evidence showing that the claimant successfully completed "continuous full-time coursework"

18   is a "proper basis on which to reject [the] testimony" that is germane to the classmate).[4]

19   Accordingly, remand is not warranted on this issue.

20   /

21   /

22   /

23   /

24

25      [4]  Plaintiff contends that "[i]f the ALJ was inclined to disregard [Mr. Shahin's] questionnaire
26   form and those reported findings therein, the ALJ should have informed [M.V.W.'s] counsel in this
regard so that [M.V.W.'s] counsel might have obtained an updated questionnaire from [M.V.W.'s]
27   current teacher which would have shed a significant amount of light on [M.V.W.'s] current level of
functioning in the classroom setting."  [JS at 13-14.] The Court rejects this argument as plaintiff
28   bears the burden of proving that M.V.W.'s impairment meets or equals a listed impairment.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate for the ALJ to properly consider plaintiff's testimony, written statements, and credibility.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.[5]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: August 16, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[5]   In light of the Court's remand order, the Court does not address plaintiff's remaining contention of error.